Good morning, Justices. Good morning, Opposing Council. I'm here on behalf of the Appellant Respondent in regards to this matter. This was a matter that the Arbitrator found in favor of the Respondent and stated that the Petitioner failed to prove accident and failed to prove notice. The Illinois Workers' Compensation Commission upheld that decision and the Circuit Court reversed the decision of the Arbitrator and the Commission. So the issue is whether or not the Arbitrator and the Commission's decision was against the manifest weight of the evidence. The case was decided solely on the credibility determinations that were made by the Arbitrator and that were substantiated by the Commission. There were two totally different stories of how and what transpired and the Arbitrator stated and ruled that the Petitioner failed to prove that he suffered a work accident or injury. The Arbitrator took into consideration both the testimony of the Petitioner and his Supervisor, which were contrary in terms of him reporting an accident and he instead relied on the fact that during the first three months that the Petitioner treated, he never reported a work injury while or ascending steps and that the company would have reported the accident and followed its procedures for reporting the accident had they been given notice of it. Quite simply, the Court just substituted its own factual determinations in reversing this case. The Circuit Court couldn't come to the conclusion that the case is compensable without totally disregarding all of the factual determinations that were made by the Arbitrator and the Commission in this case and that is not the manifest weight of the evidence standard and I think that is what was noted by the Commission when the case was sent back for remand and the Court's decision they stated that indisputably the evidence showed that notice had been given when the Commission stated that's totally incorrect because that was the whole dispute in the case and the Arbitrator found in favor of the Respondent in saying that the Petitioner was not credible and in saying that he was not credible it was due to the facts in the medical records for the first three months where actually when he was asked in November 11, 2019 and November 27, 2019, which would have been two weeks and about a month after the accident occurred, in those records there was no exciting event whatsoever and that's what he noted to the medical providers and that's what the Arbitrator primarily relied on. The Arbitrator primarily relied on the fact that if somebody did suffer a specific traumatic event where they heard a pop in their back that that would be evidenced by the actual medical records the first two to three months after the accident and the Arbitrator noted that that history was not recorded until the independent medical examination in February of 2020 and it's interesting to note by that time another doctor had already diagnosed him with a herniated disc. As we stated before, it's the manifest weight of the evidence in this case. I don't believe the Circuit Court Judge followed that standard in that it seems like he just substituted his take on what the facts should be and made his own credibility determination in reversing this case. Thank you. Any questions from the court, counsel? Okay, thank you. You'll have time in reply, Mr. Smith. Opposing counsel, you may respond. Please, the court, Tom Paris on behalf of Jason Federal. I think the first thing that your analysis should try to figure out is what exactly is the issue that the Arbitrator and the Commission say is that is going on here and for that I want to go directly to the record. Page C434 is the Arbitrator's decision and I'm going to read part of it but then I'm going to that the Commission strikes part of this and so even part of what I believe just told you is actually if we're just looking at the Commission, which I think we're supposed to be looking at, is not the decision. First, but as concerns credibility on that same page, you'll note that the Arbitrator says Petitioner does not appear to lack credibility so I don't really think this has ever been a case about credibility. I don't think that's how it should be decided but looking down to the last section or the last paragraph before we specifically talk about notice, which the Commission throws out that section, the Arbitrator says there is a possibility that neither initially believed that walking upstairs of the locomotive constituted a compensable work accident and that is why there's no initial accident report of specific history of the mechanism of injury by medical personnel until three months later when he goes to the IME, otherwise known as a discovery deposition sometimes. So are they saying, is the Arbitrator saying their causation is the issue or injury? I'm going to address that in a minute. The Arbitrator continues, however, this would be pure speculation as this is not what was testified to Petitioner and now a sentence that I think is key, though the Commission takes it out. While it is more likely than not the Petitioner developed back pain at work during his 1023 to 1024 shift, he has not shown in the Arbitrator's view by a preponderance of the evidence that how that should be, that's how he alleges this occurred was ever reported to the Respondent prior to February 11, 2020. That's the medical exam by the Petitioner. So that would suggest notice is the issue because they're saying it was never reported as a work-related injury. And so if the issue in this case is notice, then I don't think you have any problem overturning on manifest weight because we know from the statute and case law that is liberal. Some notice is enough. And if only if there's no notice in here, there's not really, you know, there's the very next day when Zach, the Supervisor is there, there's a discussion. We know that because Zach refers him to his father-in-law, chiropractor. So we know there's an injury or we know there's a discussion of an injury. The issue there simply is, is it on the stairs or sciatica? Because Zach says he was telling him his sciatica was flaring up. Well, that's an interesting statement because not a single doctor, not a single record, not a single anything except for Zach says anything about sciatica. We know the man had a massive herniated disc. He goes through an A-lift procedure, which is essentially opening up your front, going in so you can get at that disc, a major, major, you know, procedure. Is sciatica an injury? I'm sorry? Is sciatica an injury? Is sciatica an injury? I don't know what petitioner didn't have it. I mean, it's some, even if he is saying I got to, I don't know, petitioner denies it. I can't find anywhere in the record. All I can see is Zach saying that he understood that it was sciatica and that's why he refers him to his father-in-law, chiropractor. So can it be an injury? I think an aggravation of it probably can be, but there's no evidence that he had sciatica. So the importance of that comment. So your position is that the discussion was noticed. Is that correct? Absolutely. Absolutely. I mean, I don't know what else it can be. And then remember that that's on a Friday morning. It works the overnight shift. Zach was not there on Thursday morning though. And let me just depart for that for a minute from the three different issues. The most interesting thing about this decision to me is neither council, both of us have been in the case from the beginning, ever recognized that those timesheets have Zach Kuvula, the supervisor there on the morning that uh, he's not there. Um, and I'm sorry, you're breaking up that we're losing some of this here. Your connection is bad. My connection is bad. I'm sorry. Apparently. Yeah. Okay. Um, well, I'll try to press on that because I don't know what else. Yeah. So if we repeat what you were saying, that would help. The arbitrator notes that the timesheet shows that Zach Kuvula is present on the morning of the 24th. Uh, my client says that he was not, and that's why he didn't report that the night before he had, um, had a low back injury and his production is down and whatnot. Now the fact, if all of this issue is why wasn't this, um, a form filled out? First of all, there is no form. Uh, there was a lot of cross-examination on that, but when I asked Zach Kuvula if there was a form, he said, no, there is no form. You're just supposed to write it down on a piece of notebook paper or some paper that, uh, you're given. Frankly, it explains why this notice, um, issue from an employment, not on the top level, but I'm employment level is interesting because of Zach had checked in, but wasn't actually there, which my client wouldn't have known. Now, of course, he's not going to undertake an investigation the next day because he's frankly falsified his time records. But if I could just go back to notice, so the law and by the way, there's not a single case referenced in the arbitrator's decision or the commission's decision. So we don't really know what their analysis is on any of this, but notice if some notice is given, then it's up to the employer to show that they have undue prejudice because the notice was not sufficient. Well, they had plenty of time. I mean, the man calls in on has this major surgery, which they're well aware of. So besides this in person notice, which is undisputed, it's just beyond dispute. I mean, there's an actual discussion about a low back injury between a supervisor and an injured worker. Wait a minute. You're, you're gilding the lily here. There's no discussion about an injury. Is there? There's discussion about an experience of pain while he's on the job. Is that an injury? Uh, well, that's, let's go to that question then. Uh, what is an injury under the workers compact? And honestly, when I tried this case, I thought the issue was going to be whether this is a stair, uh, case and whether this stair is because obviously the courts have, um, had a lot of back and forth about, um, a stair injury. And so it, but that seems to go to causation more than injury. Um, so, so I guess I'm trying to, I'll give you an example. You're at work. Okay. And you're talking to apparently who Vela is a supervisor. Am I correct? Yes. Okay. Uh, and you know, conversation to work, how are things going? Person says, you know, I was just throwing up all night and cause he's on the third shift. I'm just throwing up all night. And Vela says, well, you ought to go see a doctor. My father-in-law is a doctor about that. And that's basically the type of nature of the conversation, isn't it? There's no connectivity, reasonable connectivity to any activity of the workplace, uh, that it's causing him to throw up. Well, if the employee never comes back for the rest of his life, um, and has told the human resource, um, department has told doctors he had, he was injured the night that night at work, um, undeniably has a back injury. Uh, let's remember that who Vela says the first thing he noticed was, um, that the petitioner was limping. Uh, nobody saw him limp in so that the back injury occurred somewhere else. Uh, his coworker says he knew that he had injured his back that night. Um, I don't think, um, a stomach flu or whatever might be going on in that hypothetical is anything, frankly, close to what was happening. What did the coworker actually testify to? Uh, he says he knew there was an injury, but he didn't know, uh, how that it happened. So he actually used the word injury? Uh, I don't want to overstate whether we use the word injury. Um, I'd have to directly look back at the, um, um, you know, so I don't know that I think we're parsing that as an injury different than an illness to some guys who work at a railroad. Uh, doesn't that sort of go to the issue and whether it's sufficient to say I injured my back or I injured my back while I'm climbing up stairs and throughout my back. I mean, how specific one has to be with respect to the notice. And if notice is the issue that is going on here, um, which may not be because according to the commission, they throw out the whole section where I was at in the record, the last, um, section of the, uh, arbitrator's decision, uh, is section E was timely notice given. And there was not too much discussion there, but the commission specifically throws out that paragraph in their, um, in their ruling. We're only reviewing the commission's decision, correct? I think that's correct. I think that's correct. Though council, uh, obviously talked quite a bit about the arbitrator's decision. Um, and so, but I do think that's the law. Yes, that you're looking at the commission's decision, so they're not looking at notice. They've thrown out notice, um, and saying it's not an issue because there's no injury. So is there injury, is there analysis of, um, simply based on injury or is it causation? Now, if you go to the very first paragraph of their decision, we affirm the arbitrator's denial of accident and specifically note that the October 28th, um, 2019 medical record dated five days after the alleged action makes no mention of a specific event involving the petitioner climbing stairs as the cause of his back. And, uh, so there seem to say that it's notice because even though they throw out the section of notice, because they're saying the record, you know, when he goes to the urgent care center, notes that he had an injury five days earlier, this is the first medical record we have. It just doesn't say stairs. It says he got injured that night, uh, at work. Well, that sounds a lot like notice to me. Um, not injury. And again, we know an injury happened. Uh, well, you know, the man's injured. Uh, did he, did it happen at work? Isn't that sort of going back to notice? And the standard, if this is a notice case, um, is strongly in favor of the petitioner because he has given notice to his, um, employer undeniably. We have this conversation about, I don't know if we want to parse it between injury and illness, when someone's talking about their low back. Um, but it, was it caused at work? Is it a causation case? Other, in other words, is it a staircase? Is the case about climbing up a railroad locomotive engine? Is that unique to any of us just climbing the stairs and injuring our back? The way I tried the case was yes. And I tried to put in how tall they were, but there's no about that with, from anybody. So it doesn't seem like it's a causation decision involving stairs. So I'll just summarize this manifest weight standard and for notice, I think clearly goes in favor of, uh, the petitioner. Uh, if it's causation, well, I think you're de novo because neither the commission or the arbitrator ever talk about it. And if it's injury, um, I tend to think it's sort of de novo as well because we have the discussion that open injury, and we're just talking about whether an injury is an injury or an illness at that point. When, when we look at the totality of the record and a man having a lift, having shots, having all that, there's an injury. Thank you. Okay. Thank you, counsel. You'll have time and reply, but no, no questions. You'll have time and reply. Mr. Paris. Thank you, Mr. Smith. You may respond. Sure. Thank you. I find it interesting that the opposing council didn't actually mention what is the issue with this case, which is credibility and the fact that the arbitrator and the commission, um, rejected his factual, um, recitation of the facts of the case. Um, specifically the arbitrator stated that, uh, one party is not testifying accurately. And after he said that he stated that, um, the petitioner stated that he notified Zach of an injury at work. Um, and if he had injured himself at work, but Zach testified that he denied injuring himself at work. So that does not go to the issue of notice. It goes to the issue of who is more credible. And then the arbitrator stated it's difficult for the arbitrator to believe that the petitioner was not, uh, was not aware that he would need to prepare a statement of what occurred had he reported a work injury. And that is taken into consideration, specifically the fact that the petitioner had to fill out nightly reports and, uh, depending on the nightly report stated that he injured himself. This is a case of credibility. The arbitrator and the commission weighed all of the evidence that the petitioner's attorney talked about the arbitrator and the commission stated that because the medical records do not support what he said, and this would be, it would be a totally different case. If he testified that he lifted something at work at that night, and he don't know what doesn't know what he did. And that as a result, he developed back pain. The reason why the arbitrator and the commission decided the way they did is because he testified to a specific traumatic event, walking down steps, hearing and feeling a pop in his back and him not reporting it to his supervisor. Then him going approximately three months without reporting that specific accident to the supervisor does not support what he's saying. And it's further supporting what the respondent said that he told me his sciatica was acting up the court and the arbitrator considered all of these factual assertions. And they decided in favor of the respondent. This is not a de novo case because it's a credibility case. And because it's a credibility case, it was the court should not have reversed this case because it was not in manifest weight of the evidence, the commission and the arbitrator considered all of this evidence. And it's within their realm to say factually, what is more likely to happen and who is more credible. It's a 100% credibility case. And I think there's some factual indications that opposing counsel got wrong. His co-worker never stated that he injured himself at work. He testified to see him limping at some point in time. So that's not in the record at all. But I think the most compelling fact in this case is what the arbitrator said is, how could you suffer some sort of specific traumatic event? And number one, not put it in your reports. Number two, not reported to your supervisor. Number three, go to the doctor for three months and not reported to your providers. Thank you. Thank you, counsel. Any questions from the court? Okay. Mr. Paris, I misspoke. You had your time to respond. So there is no reply. Do I have to reply or not as you indicated or because I could be very succinct? No, you've had your response. Thank you, though. No questions from the court? Okay. Well, thank you, counsel, both for your arguments in this matter this morning. It will be taken under advisement and a written disposition shall issue.